DAVID P. STRAUSS (SBN 96874)
ds@dstrausslaw.com
**THE LAW OFFICE OF DAVID P. STRAUSS**
501 West Broadway, Ste. 800
San Diego, CA 92101
Telephone: 619-237-5300
Facsimile: 619-237-5311

Attorneys for Plaintiff
ALLISON PARTNERS, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Allison Partners, LLC<br><br>        Plaintiff,<br><br>    v.<br><br>Gosier Holdings, LLC, FilmHedge, LLC, Southbox Capital, LLC, and Southbox Entertainment, LLC<br><br>        Defendants. | Case No.: 3:25-cv-00680-WQH-JLB<br><br>**PLAINTIFF ALLISON PARTNERS, LLC'S RENEWED MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS FILMHEDGE, LLC, SOUTHBOX CAPITAL, LLC, AND SOUTHBOX ENTERTAINMENT, LLC**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Hearing Date: August 31, 2026<br><br>NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT |

PLAINTIFF ALLISON PARTNERS LLC'S RENEWED MOTION FOR DEFAULT JUDGEMENT AGAINST DEFENDANT'S FILMHEDGE, LLC, SOUTHBOX CAPITAL, LLC, AND SOUTHBOX ENTERTAINMENT, LLC

Plaintiff Allison Partners, LLC, also identified in certain underlying documents as Allison+Partners, LLC ("Plaintiff"), by and through undersigned counsel, respectfully renews its motion pursuant to Federal Rule of Civil Procedure 55(b)(2) for entry of default judgment against Defendants FilmHedge, LLC, Southbox Capital, LLC, and Southbox Entertainment, LLC (collectively, the "Defaulting Defendants").

The Court previously denied Plaintiff's original Motion for Default Judgment without prejudice because the record did not establish that the individual who initially received the summonses and Complaint possessed authority to accept service on behalf of the Defaulting Defendants' corporate registered agent. Plaintiff thereafter obtained an order setting aside the original entries of default and re-served each Defaulting Defendant on April 8, 2026, by personally delivering the summons and Complaint to the Secretary of Harvard Business Services, Inc. ("HBS"), the corporate registered agent for each Defaulting Defendant.

That service cured the defect identified by the Court. Delaware law expressly authorizes service upon the secretary of a corporation serving as a registered agent. See 8 Del. C. § 321(a). The Defaulting Defendants nevertheless failed to answer, appear, or otherwise defend this action, and the Clerk entered default against each of them on June 26, 2026.

Plaintiff seeks entry of default judgment against the Defaulting Defendants, jointly and severally, in the principal amount of $77,000.00. That amount consists of $55,000.00 in invoices issued for the engagement, less the $11,000.00 deposit

- 1 -

previously paid, leaving $44,000.00 in unpaid invoices, together with $33,000.00 attributable to the agreed ninety-day termination period.

Plaintiff further requests prejudgment interest as permitted by applicable law, taxable costs, post-judgment interest pursuant to 28 U.S.C. § 1961, and such other and further relief as the Court deems just and proper.

In support of this Motion, Plaintiff submits the Declaration of Brian Feldman, attached as Exhibit 1, authenticating the Master Services Agreement and Statement of Work (collectively, the "Agreement"), the invoices, the proofs of service, and the Clerk's Entry of Default. Plaintiff also submits the Supplemental Declaration of Brian Feldman, attached as Exhibit 2, describing Plaintiff's post-dismissal investigation concerning the identity and legal existence of "Gosier Holdings, LLC" and authenticating records demonstrating that Jon Gosier publicly identified Southbox Capital, LLC as "d/b/a Gosier Holdings" and that the Delaware corporate number associated with "Gosier Holdings, LLC" is assigned by the Delaware Division of Corporations to Southbox Capital, LLC.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Brian Feldman and its exhibits, the Supplemental Declaration of Brian Feldman and its exhibits, Plaintiff's Request for Judicial Notice, the pleadings and records on file, and any argument or evidence the Court permits.

/ / /

- 2 -

PLAINTIFF ALLISON PARTNERS LLC'S RENEWED MOTION FOR DEFAULT JUDGEMENT AGAINST DEFENDANT'S FILMHEDGE, LLC, SOUTHBOX CAPITAL, LLC, AND SOUTHBOX ENTERTAINMENT, LLC

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This action arises from professional communications, branding, marketing, public-relations, investor-relations, and related consulting services Plaintiff rendered for the benefit of the Southbox business enterprise, including Southbox Capital, FilmHedge, and Southbox Entertainment.

On November 11, 2022, Jon Gosier executed the Agreement beneath the words "Accepted for: Gosier Holdings, LLC" and identified his title as "Owner and CEO." The Agreement expressly contemplated that Plaintiff would provide services not only to the named client but also to applicable client affiliates. The incorporated Statement of Work expressly identified Southbox Capital, Southbox Entertainment, FilmHedge, and Jon Gosier as the subjects and beneficiaries of Plaintiff's work. It required Plaintiff to increase visibility for those entities, develop a communications narrative for Southbox Capital and its relationships with FilmHedge and Southbox Entertainment, and conduct media outreach concerning Southbox Capital. Feldman Decl. Ex. A.

Plaintiff performed the contemplated services between November 1, 2022, and April 10, 2023. The Defaulting Defendants knowingly received, accepted, and retained the benefits of Plaintiff's work. Plaintiff's contemporaneous invoices were addressed to Gosier Holdings but consistently identified the engagement as the "Southbox Capital Retainer 2022-2023." Feldman Decl. Ex. B.

/ / /

- 3 -

PLAINTIFF ALLISON PARTNERS LLC'S RENEWED MOTION FOR DEFAULT JUDGEMENT AGAINST DEFENDANT'S FILMHEDGE, LLC, SOUTHBOX CAPITAL, LLC, AND SOUTHBOX ENTERTAINMENT, LLC

Apart from an initial $11,000.00 deposit, Plaintiff was not paid. Plaintiff issued invoices totaling $55,000.00. After application of the $11,000.00 deposit, $44,000.00 remained due for services already rendered. The Agreement also required ninety days' advance notice of termination and provided that Plaintiff retained the right to receive its full monthly compensation throughout the termination-notice period. At the $11,000.00 monthly invoiced amount, the additional amount attributable to that period is $33,000.00. Plaintiff's total principal damages are therefore $77,000.00. Feldman Decl. ¶ 2 & Exs. A–B.

After Gosier Holdings was dismissed without prejudice because Plaintiff was unable to locate and serve it, Plaintiff undertook further investigation concerning that name. Plaintiff was unable to locate an official record establishing the existence of a separately organized entity called Gosier Holdings, LLC. Plaintiff instead located evidence showing that "Gosier Holdings" was the business name used by Southbox Capital. Jon Gosier's publicly available biography describes Southbox Capital as "d/b/a Gosier Holdings." Feldman Supp. Decl. ¶¶ 6-7 & Ex. A. During its investigation, Plaintiff also located a publicly available business database, OpenCorporates (www.opencorporates.com), which associated the name "Gosier Holdings, LLC" with Delaware Corporate Number 6334225. Plaintiff did not rely solely on that third-party database. Instead, Plaintiff independently searched Delaware Corporate Number 6334225 through the official records maintained by the Delaware Division of Corporations. The official Delaware records identify Corporate Number 6334225 as

- 4 -

belonging to Southbox Capital, LLC. See Feldman Supp. Decl. ¶¶ 8-9 & Exs. B-C; Request for Judicial Notice ("RJN") Ex. 1.

Southbox Capital is therefore the entity owned by Jon Gosier and the holding company through which FilmHedge and Southbox Entertainment were owned and operated. The use of "Gosier Holdings" in the Agreement did not identify a separate legal entity; it identified Southbox Capital under its assumed or trade name. The Complaint's allegations that Gosier Holdings was owned by Jon Gosier and served as the parent of the other Defaulting Defendants thus refer, in substance, to Southbox Capital doing business as Gosier Holdings.

The record presents a coherent and unrebutted factual picture:

- Jon Gosier executed the Agreement using the name "Gosier Holdings, LLC";

- Southbox Capital did business under the name Gosier Holdings and was owned by Jon Gosier;

- Southbox Capital, under that business name, served as the holding company for FilmHedge and Southbox Entertainment;

- the Agreement contemplated services for client affiliates;

- the Statement of Work expressly identified Southbox Capital, FilmHedge, and Southbox Entertainment as the subjects and beneficiaries of Plaintiff's performance;

- 5 -

- Plaintiff's contemporaneous invoices called the engagement the "Southbox Capital Retainer";

- Jon Gosier publicly described Southbox Capital as "d/b/a Gosier Holdings";

- the corporate number associated with the Gosier Holdings name in a publicly available business database is officially assigned to Southbox Capital;

- Plaintiff could locate no official record of a separately organized Gosier Holdings, LLC; and

- the Defaulting Defendants accepted and retained the benefits of Plaintiff's performance without paying for them.

The Defaulting Defendants have twice failed to respond to this action. After the Court identified a deficiency in the original service record, Plaintiff set aside the prior defaults and re-served each Defendant through an officer expressly authorized by Delaware law to receive process. The Defaulting Defendants again failed to answer or appear. Entry of judgment is warranted.

## II. JURISDICTION AND VENUE

### a. The Court Has Subject-Matter Jurisdiction

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

///

///

- 6 -

Plaintiff is a Delaware limited liability company whose ultimate single member is Stagwell, Inc., a Delaware corporation with its principal place of business in New York. Plaintiff is therefore a citizen of Delaware and New York. Compl. ¶ 3.

The Complaint alleges that Jon Gosier, a citizen of Pennsylvania, wholly owned the holding company identified in the pleading as Gosier Holdings and that the holding company owned FilmHedge, Southbox Capital, and Southbox Entertainment. Compl. ¶¶ 4–7, 9. The supplemental evidence clarifies that the holding company was Southbox Capital doing business as Gosier Holdings, rather than a separately organized entity. Southbox Capital was owned by Jon Gosier and was therefore a citizen of Pennsylvania. FilmHedge and Southbox Entertainment, whose membership traced through Southbox Capital to Jon Gosier, were likewise citizens of Pennsylvania. Complete diversity exists between Plaintiff and the Defaulting Defendants.

The amount in controversy at the time this action was commenced exceeded $75,000.00, exclusive of interest and costs. Plaintiff seeks $77,000.00 in principal damages, together with prejudgment interest, contractual bookkeeping charges, attorneys' fees, and costs. See Compl. ¶¶ 19–23 & Demand for Relief. Accordingly, this Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a).

### b. Venue Is Proper

Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the Complaint alleges that acts and transactions giving rise to Plaintiff's claims occurred in this State and District. Compl. ¶ 2.

- 7 -

PLAINTIFF ALLISON PARTNERS LLC'S RENEWED MOTION FOR DEFAULT JUDGEMENT AGAINST DEFENDANT'S FILMHEDGE, LLC, SOUTHBOX CAPITAL, LLC, AND SOUTHBOX ENTERTAINMENT, LLC

The Agreement is governed by California law and provides that each party submits to the exclusive jurisdiction of the federal and state courts located in California for any action or proceeding relating to the Agreement and waives defenses based upon venue or forum non conveniens. Feldman Decl. Ex. A. The Agreement therefore confirms the parties' consent to litigation in California.

## III.    FACTUAL BACKGROUND

### a.  The Agreement Contemplated Services for the Southbox Entities

Plaintiff is a globally integrated marketing and communications consultancy. Compl. ¶ 8.

Plaintiff and the business identified as Gosier Holdings entered into the Agreement effective November 1, 2022. Compl. ¶ 10; Feldman Decl. Ex. A. The Master Services Agreement stated that the client entered into the Agreement "for itself and on behalf of each applicable Client Affiliate" and contemplated statements of work governing services provided to the client or an affiliated entity.

The Statement of Work expressly identified Southbox Capital, Southbox Entertainment, FilmHedge, and Jon Gosier as the focus of Plaintiff's services. Among other things, Plaintiff agreed to increase public visibility for those entities; develop storylines and themes for them; develop a broad narrative for Southbox Capital, including its relationships with Southbox Entertainment, FilmHedge, and other portfolio companies; conduct continuing media outreach concerning Southbox Capital; develop and maintain a customized media list for Southbox Capital; and provide

- 8 -

ongoing strategic counsel and account management for the engagement. Feldman Decl. Ex. A.

Thus, the written Agreement itself confirms the Complaint's allegation that Plaintiff's services were contemplated and performed for the benefit of the Defaulting Defendants. See Compl. ¶¶ 11–14.

### b. Southbox Capital Did Business as Gosier Holdings and Served as the Holding Company

The Agreement used the name "Gosier Holdings, LLC," and Jon Gosier signed as its "Owner and CEO." The Complaint accordingly alleged that Gosier Holdings was owned by Jon Gosier and served as the parent company of FilmHedge, Southbox Capital, and Southbox Entertainment. Compl. ¶¶ 4–7, 9; Feldman Decl. Ex. A.

Plaintiff's post-dismissal investigation clarifies the legal identity behind that business name. Plaintiff found no official record of a separate legal entity organized as Gosier Holdings, LLC. Instead, Jon Gosier's own public biography described Southbox Capital as "d/b/a Gosier Holdings." A third-party business database associated the Gosier Holdings name with Delaware Corporate Number 6334225, and Delaware's official corporate records identify that number as belonging to Southbox Capital, LLC. Feldman Supp. Decl. ¶¶ 5–9 & Exs. A–C.

The evidence therefore shows that Southbox Capital was the entity doing business as Gosier Holdings, was owned by Jon Gosier, and was used as the holding company for FilmHedge and Southbox Entertainment. The allegations in the

- 9 -

Complaint concerning the ownership and holding-company function of Gosier Holdings refer to Southbox Capital operating under the Gosier Holdings name.

### c. Plaintiff Performed, and the Defaulting Defendants Retained the Benefits

Between November 1, 2022, and April 10, 2023, Plaintiff performed the agreed communications, branding, marketing, investor-relations, public-relations, and related consulting services. Compl. ¶ 14.

Those services were performed for the benefit of FilmHedge, Southbox Capital, and Southbox Entertainment. Id. The Defaulting Defendants received and retained those services and the resulting communications strategy, media outreach, branding work, public-relations support, and professional resources supplied by Plaintiff.

Plaintiff's work was not gratuitous. The services were rendered as part of a commercial engagement under which Plaintiff was to receive monthly compensation.

Plaintiff's contemporaneous invoices confirm the commercial identity of the engagement. Although addressed to "Gosier Holdings, LLC," every invoice identified the job or component as the "Southbox Capital Retainer 2022-2023." Feldman Supp. Decl. ¶ 4; Feldman Decl. Ex. B.

Neither Jon Gosier nor anyone acting for the Defaulting Defendants advised Plaintiff during the engagement that Gosier Holdings was not a separately organized entity, that Plaintiff was performing for an unrelated entity, or that Southbox Capital disclaimed responsibility for the engagement. Feldman Supp. Decl. ¶ 11.

- 10 -

#### d. The Unpaid Amount Is $77,000.00

Plaintiff issued invoices totaling $55,000.00. Feldman Decl. ¶ 2 & Ex. B. The Agreement authorized Plaintiff to apply the $11,000.00 deposit against amounts owed. After application of the deposit, the unpaid invoice balance was $44,000.00.

The Agreement further required not less than ninety days' advance written notice of termination. It provided that the parties' rights, duties, and responsibilities would continue throughout that notice period, including Plaintiff's right to receive its full monthly fee compensation. Feldman Decl. Ex. A. At the $11,000.00 monthly invoiced amount, the compensation attributable to that ninety-day period is $33,000.00.

| Component | Amount |
|---|---|
| Invoices issued | $55,000.00 |
| Less deposit applied | ($11,000.00) |
| Net unpaid invoices | $44,000.00 |
| Ninety-day termination period | $33,000.00 |
| Total principal damages | $77,000.00 |

Plaintiff attempted to collect the outstanding amounts. On May 1, 2023, Plaintiff's General Counsel invited Jon Gosier to identify any alleged deficiencies in Plaintiff's performance and to propose what he believed would constitute a fair resolution. He did neither. Compl. ¶ 18. The amounts remain unpaid.

### IV.    PROCEDURAL HISTORY

Plaintiff filed its Complaint on March 24, 2025. ECF No. 1. The Complaint asserted a breach-of-contract claim against Gosier Holdings and an unjust-enrichment

- 11 -

claim against all Defendants, including FilmHedge, Southbox Capital, and Southbox Entertainment. Compl. ¶¶ 24–33.

Plaintiff initially attempted to serve the Defaulting Defendants through HBS at its registered office in Lewes, Delaware. ECF Nos. 3–5. The original proofs stated that the summonses and Complaint had been delivered to an HBS mailroom specialist. The Defaulting Defendants did not answer, and the Clerk entered their defaults on July 21, 2025. ECF No. 7.

Plaintiff thereafter moved for default judgment. ECF No. 11. On February 17, 2026, the Court denied the motion without prejudice. ECF No. 12. The Court determined that the record did not establish that the mailroom specialist who received the papers was an officer or director of HBS, had been appointed to receive service, or occupied a position from which authority to accept service could fairly be implied.

The Court permitted Plaintiff either to renew its motion with additional evidence or to move to set aside the original defaults and re-serve the Defaulting Defendants in compliance with Rule 4 or applicable state law. Id. Plaintiff elected to cure the service issue. On March 17, 2026, Plaintiff moved to set aside the Clerk's prior entries of default. ECF No. 13. On March 23, 2026, the Court granted that motion. ECF No. 14.

On April 8, 2026, Plaintiff personally re-served each Defaulting Defendant through HBS at its registered office at 16192 Coastal Highway, Lewes, Delaware 19958. The process server personally delivered the summons and Complaint issued to

- 12 -

each Defaulting Defendant to Alison Rathmanner, identified in the proofs of service as the Secretary of the registered agent. ECF Nos. 15; Feldman Decl. ¶ 3 & Ex. C.

More than twenty-one days elapsed, and none of the Defaulting Defendants answered, moved, appeared, requested an extension, or otherwise defended this action. Plaintiff requested new entries of default, and on June 26, 2026, the Clerk entered default against FilmHedge, Southbox Capital, and Southbox Entertainment. ECF No. 20; Feldman Decl. ¶ 4 & Ex. D. The Defaulting Defendants remain in default.

The Court subsequently dismissed Gosier Holdings without prejudice because Plaintiff was unable to locate and serve a separate entity under that name. ECF No. 12. Plaintiff now renews its motion only against the three properly served Defaulting Defendants.

## V.    THE COURT HAS PERSONAL JURISDICTION OVER THE DEFAULTING DEFENDANTS

Before entering default judgment, the Court must satisfy itself that it possesses personal jurisdiction over the defendants. In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999). Proper service under Rule 4 is necessary to establish personal jurisdiction. Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc., 840 F.2d 685, 688 (9th Cir. 1988). Plaintiff's renewed service satisfies Rule 4 and Delaware law.

### a.  Rule 4 Permits Service in Accordance with Delaware Law

Federal Rule of Civil Procedure 4(h)(1) provides that a domestic corporation, partnership, or other unincorporated association may be served:

PLAINTIFF ALLISON PARTNERS LLC'S RENEWED MOTION FOR DEFAULT JUDGEMENT AGAINST DEFENDANT'S FILMHEDGE, LLC, SOUTHBOX CAPITAL, LLC, AND SOUTHBOX ENTERTAINMENT, LLC

(A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or

(B) by delivering a copy of the summons and complaint to an officer, a managing or general agent, or any other agent authorized by appointment or law to receive service of process.

Rule 4(e)(1), incorporated through Rule 4(h)(1)(A), permits service by following the law governing service in the state where the district court is located or where service is made. Because Plaintiff served the Defaulting Defendants in Delaware, service is valid if it complies with Delaware law.

### b. Plaintiff Complied with 8 Del. C. § 321(a)

Through 8 Del. C. § 321(a), Delaware law expressly provides:

If the registered agent be a corporation, service of process upon it as such agent may be made by serving, in this State, a copy thereof on the president, vice-president, secretary, assistant secretary or any director of the corporate registered agent.

Official records maintained by the Delaware Division of Corporations identify HBS as the registered agent for each Defaulting Defendant. See RJN, Exs. 1–3. On April 8, 2026, the process server personally delivered the summons and Complaint issued to FilmHedge, Southbox Capital, and Southbox Entertainment to Alison Rathmanner, the Secretary of HBS, at HBS's registered office in Delaware. ECF Nos. 15; Feldman Decl. ¶ 3 & Ex. C.

The secretary is one of the corporate officers expressly identified in section 321(a) as authorized to receive process for a corporation serving as registered agent.

Plaintiff therefore does not rely upon the recipient's apparent authority, general employment responsibilities, or informal relationship with HBS. Rathmanner's authority to receive service arose directly by operation of Delaware law.

This service is materially different from the initial service attempt. The original proofs identified the recipient only as a mailroom specialist. The Court concluded that the prior record did not establish that the recipient was an officer, director, appointed agent, or employee occupying a position from which authority could fairly be implied. The renewed proofs establishes that process was personally delivered to HBS's Secretary, the precise office expressly authorized by section 321(a). Plaintiff therefore cured the deficiency identified in the Court's February 17, 2026 Order.

### c. Service Also Satisfies Rule 4(h)(1)(B) and Direct Mail

The renewed service independently satisfies Rule 4(h)(1)(B), which permits delivery to an officer or another agent authorized by law to receive process. Rathmanner was both an officer of the registered agent and a person expressly authorized by Delaware statute to receive service directed to HBS in its capacity as registered agent.

In *Direct Mail*, the Ninth Circuit explained that Rule 4 should not be applied through a rigid formalistic inquiry divorced from the recipient's actual position and relationship to the organization. 840 F.2d at 688–89. Service may be sufficient when made upon a representative sufficiently integrated into the organization to know what

PLAINTIFF ALLISON PARTNERS LLC'S RENEWED MOTION FOR DEFAULT JUDGEMENT AGAINST DEFENDANT'S FILMHEDGE, LLC, SOUTHBOX CAPITAL, LLC, AND SOUTHBOX ENTERTAINMENT, LLC

to do with the papers or who occupies a position making it fair and reasonable to imply authority. *Id.*

Here, the Court need not infer authority because Delaware law supplies it expressly. Even under the broader *Direct Mail* inquiry, every relevant circumstance supports valid service:

- Rathmanner held the formal office of Secretary of HBS;

- she occupied a senior position within the corporate registered agent;

- Delaware law specifically identifies a corporate registered agent's secretary as authorized to receive process;

- service occurred at HBS's registered office during ordinary business hours;

- each proof identified the particular Defaulting Defendant for which HBS accepted service; and

- the Defaulting Defendants received the full period allowed by Rule 12(a) but again failed to respond.

Accordingly, service was valid under Rule 4(h)(1)(A), Rule 4(e)(1), Rule 4(h)(1)(B), and 8 Del. C. § 321(a). The Court therefore possesses personal jurisdiction over the Defaulting Defendants.

## VI.   LEGAL STANDARD FOR DEFAULT JUDGMENT

Federal Rule of Civil Procedure 55 establishes a two-step process. First, the Clerk enters default when a party against whom affirmative relief is sought fails to

- 16 -

plead or otherwise defend. Fed. R. Civ. P. 55(a). After default has been entered, the plaintiff may seek judgment pursuant to Rule 55(b).

Whether to enter default judgment lies within the Court's discretion. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In exercising that discretion, the Court considers:

- the possibility of prejudice to the plaintiff;

- the merits of the plaintiff's substantive claim;

- the sufficiency of the complaint;

- the amount of money at stake;

- the possibility of a dispute concerning material facts;

- whether the default resulted from excusable neglect; and

- the strong policy favoring decisions on the merits.

*Id.*

Upon default, the well-pleaded factual allegations of the Complaint, except those concerning damages, are taken as true. TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917–18 (9th Cir. 1987); Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977). Plaintiff must separately establish the amount of its damages. The Court may rely upon declarations and documentary evidence and need not conduct an evidentiary hearing where the damages can be determined from the written record. Fed. R. Civ. P. 55(b)(2).

/ / /

PLAINTIFF ALLISON PARTNERS LLC'S RENEWED MOTION FOR DEFAULT JUDGEMENT AGAINST DEFENDANT'S FILMHEDGE, LLC, SOUTHBOX CAPITAL, LLC, AND SOUTHBOX ENTERTAINMENT, LLC

## VII.   THE EITEL FACTORS SUPPORT ENTRY OF DEFAULT JUDGMENT

### a.  Plaintiff Will Be Prejudiced Without Judgment

The first *Eitel* factor strongly favors Plaintiff. Plaintiff rendered substantial professional services for the Defaulting Defendants' benefit. Those Defendants accepted and retained the services but have failed to provide compensation. The Defaulting Defendants have twice declined to participate in this litigation. Without entry of default judgment, Plaintiff has no practical means of obtaining compensation for the value of the professional services and resources it provided. Plaintiff would therefore be left without a remedy solely because the Defaulting Defendants chose not to appear.

### b.  The Complaint States a Meritorious Unjust-Enrichment Claim

The second and third *Eitel* factors, the merits of the substantive claim and the sufficiency of the Complaint, support judgment. The Complaint alleges that Plaintiff performed services under the Agreement; those services were performed for the benefit of FilmHedge, Southbox Capital, and Southbox Entertainment; the Defaulting Defendants received and retained the benefits of those services; Plaintiff did not receive the compensation due; and it would be inequitable for the Defaulting Defendants to retain those benefits without paying Plaintiff. Compl. ¶¶ 11–20, 29–33.

Under California law, unjust enrichment describes the equitable principle underlying a restitutionary remedy. The pertinent inquiry is whether the defendant received and unjustly retained a benefit at the plaintiff's expense. See *Hartford*

- 18 -

*Casualty Insurance Co. v. J.R. Marketing,* L.L.C., 61 Cal. 4th 988, 998 (2015); *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51 (1996).

The Complaint's well-pleaded allegations establish that the Defaulting Defendants knowingly received and retained Plaintiff's valuable professional services without compensation. Those allegations are admitted by default and support restitution. The documentary evidence independently reinforces the admitted allegations:

- the Master Services Agreement contemplated services for client affiliates;

- the Statement of Work expressly named Southbox Capital, FilmHedge, and Southbox Entertainment as subjects and beneficiaries of Plaintiff's services;

- the invoices consistently identified the engagement as the "Southbox Capital Retainer";

- Jon Gosier publicly described Southbox Capital as "d/b/a Gosier Holdings";

- the Delaware corporate number associated with the Gosier Holdings name belongs to Southbox Capital;

- Southbox Capital was owned by Jon Gosier and functioned as the holding company for FilmHedge and Southbox Entertainment; and

- Plaintiff could locate no official record of a separately organized Gosier Holdings, LLC.

- 19 -

The use of the Gosier Holdings name in the Agreement does not defeat Plaintiff's restitutionary claim. The evidence shows that Gosier Holdings was the business name used by Southbox Capital, not an unrelated legal entity. Plaintiff seeks restitution from Southbox Capital and the affiliated entities that actually received, accepted, and retained Plaintiff's performance.

The Agreement is relevant evidence of the nature and scope of the engagement, the services contemplated, the expected compensation, and the parties' own valuation of Plaintiff's work. The Defaulting Defendants' admitted receipt and retention of those services support restitution.

### c.  The Amount at Stake Is Proportional and Supported by the Record

The fourth *Eitel* factor also favors judgment. Plaintiff seeks $77,000.00 in principal damages. The requested amount is not speculative, punitive, or disproportionate. It is derived from the compensation structure documented in the Agreement and invoices: $55,000.00 in invoiced amounts, less the $11,000.00 deposit, leaving $44,000.00 in net unpaid invoices, plus $33,000.00 attributable to the ninety-day termination period. The request is supported by contemporaneous business records and sworn testimony and bears a direct relationship to the professional services, personnel, and resources supplied and maintained for the engagement.

### d.  There Is Little Possibility of a Material Factual Dispute

The fifth *Eitel* factor favors Plaintiff. The Defaulting Defendants have not appeared to contest any allegation. By default, they have admitted the well-pleaded

- 20 -

facts concerning their receipt and retention of Plaintiff's services. The material documentary evidence is internally consistent: the Agreement establishes the engagement and its compensation structure; the Statement of Work identifies the Defaulting Defendants as intended beneficiaries of the work; the invoices identify the engagement as the Southbox Capital retainer; Jon Gosier's biography connects the Gosier Holdings name to Southbox Capital; the official Delaware record connects the relevant corporate number to Southbox Capital; and no Defendant objected during performance that Plaintiff was working for an unrelated or incorrect entity. The damages are supported by fixed figures and straightforward arithmetic.

### e.  The Defaults Were Not Caused by Excusable Neglect

The sixth *Eitel* factor strongly favors judgment. Each Defaulting Defendant was initially served and failed to respond. After the Court identified a deficiency in the original service record, Plaintiff set aside the prior defaults and personally re-served each Defendant through an officer expressly authorized by Delaware statute to receive process. Despite valid renewed service, no Defaulting Defendant answered, requested additional time, moved to dismiss, appeared through counsel, sought to set aside default, or otherwise communicated with Plaintiff or the Court. The repeated failure to respond supports the conclusion that the defaults resulted from conscious inaction rather than excusable neglect.

### f.  The Policy Favoring Decisions on the Merits Does Not Preclude Judgment

- 21 -

The seventh *Eitel* factor recognizes the general policy favoring decisions on the merits. That policy, standing alone, does not preclude default judgment where defendants refuse to participate in the litigation. Plaintiff has afforded the Defaulting Defendants two opportunities to appear. A merits adjudication is not reasonably possible because the Defendants have declined to answer or defend despite proper service. Denying relief on that basis would allow the Defaulting Defendants to benefit from their own refusal to participate.

## VIII.    PLAINTIFF HAS ESTABLISHED DAMAGES OF $77,000.00

Although liability allegations are admitted by default, Plaintiff must establish its damages. Plaintiff has done so through the Feldman Declaration, the Agreement, the invoices, and the accompanying business records.

### a.  The Net Unpaid Invoice Balance Is $44,000.00

Plaintiff issued invoices totaling $55,000.00 for the engagement. Feldman Decl. ¶ 2 & Ex. B. Plaintiff received an initial deposit of $11,000.00, and the Agreement authorized Plaintiff to apply that deposit to amounts owed. The resulting unpaid invoice balance is $44,000.00. The invoices identify the work as the "Southbox Capital Retainer" and document the monthly professional fees and basic expense charges. Plaintiff should therefore be awarded $44,000.00 as the unpaid balance for services rendered and accepted.

### b. The Ninety-Day Termination Period Represents an Additional $33,000.00

- 22 -

PLAINTIFF ALLISON PARTNERS LLC'S RENEWED MOTION FOR DEFAULT JUDGEMENT AGAINST DEFENDANT'S FILMHEDGE, LLC, SOUTHBOX CAPITAL, LLC, AND SOUTHBOX ENTERTAINMENT, LLC

The Agreement required not less than ninety days' advance written notice of termination and provided that the parties' rights, duties, and responsibilities would continue during the notice period, including Plaintiff's right to receive its full monthly compensation. Feldman Decl. Ex. A. Plaintiff's monthly invoiced amount was $11,000.00. The compensation attributable to the ninety-day notice period is therefore $33,000.00.

This amount is not an arbitrary penalty. It represents the compensation assigned by the parties to the professional personnel, strategic resources, availability, capacity, and related services Plaintiff committed to the engagement during the required wind-down period.

The Complaint expressly alleges that the client was required to pay $33,000.00 for the agreed ninety-day termination period and that the total principal amount owed was $77,000.00. Compl. ¶¶ 20, 23. The requested judgment therefore does not exceed or differ in kind from the relief demanded in the Complaint. See Fed. R. Civ. P. 54(c). The Agreement may also be considered as evidence of the reasonable value of the benefits Plaintiff supplied and of the parties' agreed valuation of Plaintiff's monthly performance and committed capacity.

### c.  The Total Principal Damages Are $77,000.00

Plaintiff's established principal damages are $44,000.00 plus $33,000.00, for a total of $77,000.00. Plaintiff requests that the Defaulting Defendants be held jointly and severally liable because the Complaint alleges that each received and retained the

- 23 -

benefits of the same integrated engagement and the same professional services. Compl. ¶¶ 29–33. Plaintiff does not seek multiple recoveries; it requests one total principal judgment of $77,000.00, enforceable jointly and severally against the Defaulting Defendants.

### d. Prejudgment Interest

Plaintiff requests prejudgment interest as permitted by California law. California Civil Code section 3287(a) permits recovery of prejudgment interest where damages are certain or capable of being made certain by calculation and the right to recover vested on a particular day. The amounts sought here are capable of calculation from fixed invoices, the deposit credit, the agreed monthly compensation, and the ninety-day notice period. Plaintiff therefore requests prejudgment interest on each recoverable amount from the date it became due through entry of judgment, in an amount established by Plaintiff's concurrently filed or supplemental interest calculation. Alternatively, Plaintiff requests that the Court award principal damages and permit Plaintiff to submit a calculation of prejudgment interest before entry of final judgment.

### e. Post-Judgment Interest

Plaintiff requests post-judgment interest pursuant to 28 U.S.C. § 1961 from the date judgment is entered until the judgment is satisfied. Plaintiff reserves any request for attorneys' fees and recoverable contractual bookkeeping charges for a timely post-judgment motion pursuant to Federal Rule of Civil Procedure 54(d)(2), the applicable Local Rules, and any order entered by the Court.

- 24 -

## IX.   AN EVIDENTIARY HEARING IS UNNECESSARY

Rule 55(b)(2) permits, but does not require, an evidentiary hearing. A hearing is unnecessary where damages are capable of determination from definite figures contained in documentary evidence and sworn declarations. Here, Plaintiff's principal damages are established by the Agreement, the fixed monthly compensation, the invoices, the deposit provision, the ninety-day termination provision, the Feldman Declaration, and the Feldman Supplemental Declaration. The requested award involves straightforward arithmetic. No live testimony is necessary to determine the principal amount.

Plaintiff therefore requests that the Court decide the Renewed Motion on the written record. Should the Court require additional evidence or clarification concerning any component of damages, Plaintiff requests leave to submit supplemental evidence rather than denial of the Motion.

## X.   CONCLUSION

The Court's prior order identified a deficiency in Plaintiff's original proof of service: the record did not establish that the mailroom specialist who received the papers possessed authority to accept service on behalf of HBS. Plaintiff cured that deficiency. It set aside the prior defaults, personally re-served each Defaulting Defendant through the Secretary of HBS, an officer expressly authorized by 8 Del. C. § 321(a) to receive service for a corporate registered agent, and obtained new entries of default after the Defendants again failed to appear.

The well-pleaded allegations establish that FilmHedge, Southbox Capital, and Southbox Entertainment received and retained the benefits of Plaintiff's professional services without compensating Plaintiff. The documentary evidence further establishes that the engagement identified in the Agreement under the Gosier Holdings name was the Southbox Capital engagement: Southbox Capital did business as Gosier Holdings, was owned by Jon Gosier, and served as the holding company for FilmHedge and Southbox Entertainment; the Agreement contemplated performance for affiliated entities; the Statement of Work expressly identified the Defaulting Defendants as the subjects and beneficiaries of Plaintiff's work; the invoices called the engagement the "Southbox Capital Retainer"; Jon Gosier publicly described Southbox Capital as "d/b/a Gosier Holdings"; the corporate number associated with the Gosier Holdings name is officially assigned to Southbox Capital; and Plaintiff found no official record of a separately organized Gosier Holdings, LLC.

The Defaulting Defendants should not be permitted to retain the benefits of Plaintiff's work without compensation based upon the use of a business name that does not correspond to a separately organized entity.

Because Plaintiff has established valid service, personal jurisdiction, liability, and damages, and because the Eitel factors favor entry of judgment, Plaintiff respectfully requests that the Court enter default judgment against FilmHedge, LLC, Southbox Capital, LLC, and Southbox Entertainment, LLC, jointly and severally, and award:

- 26 -

PLAINTIFF ALLISON PARTNERS LLC'S RENEWED MOTION FOR DEFAULT JUDGEMENT AGAINST
DEFENDANT'S FILMHEDGE, LLC, SOUTHBOX CAPITAL, LLC, AND SOUTHBOX ENTERTAINMENT, LLC

- principal damages in the amount of $77,000.00;

- prejudgment interest in the amount established by Plaintiff's supporting calculation or as determined by the Court;

- post-judgment interest pursuant to 28 U.S.C. § 1961;

- leave to file a timely post-judgment motion for reasonable attorneys' fees and any recoverable contractual bookkeeping charges; and

- such other and further relief as the Court deems just and proper.

Respectfully Submitted,

Dated:  July 24, 2026          **THE LAW OFFICE OF DAVID P. STRAUSS**

By: _DavidStr_____

DAVID P. STRAUSS
Attorneys for Plaintiff,
ALLISON PARTNERS, LLC

- 27 -

## CERTIFICATE OF SERVICE

I certify that on July 24, 2026, I caused the foregoing Plaintiff Allison Partners, LLC's Renewed Motion for Default Judgment Against Defendants FilmHedge, LLC, Southbox Capital, LLC, and Southbox Entertainment, LLC to be filed through the Court's CM/ECF system. Because the Defaulting Defendants have not appeared, I further caused a copy to be served by first-class United States mail, postage prepaid, upon the following:

FilmHedge, LLC
C/O Harvard Business Services Inc. - Registered Agent
16192 Coastal Highway
Lewes, Delaware 19958

Southbox Capital, LLC
C/O Harvard Business Services Inc. - Registered Agent
16192 Coastal Highway
Lewes, Delaware 19958

Southbox Entertainment, LLC
C/O Harvard Business Services Inc. - Registered Agent
16192 Coastal Highway
Lewes, Delaware 19958

Dated: July 24, 2026         THE LAW OFFICE OF DAVID P. STRAUSS

By: _____
DAVID P. STRAUSS
Attorneys for Plaintiff,
ALLISON PARTNERS, LLC

- 28 -

# EXHIBIT 1

## DECLARATION OF BRIAN FELDMAN IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

I, Brian Feldman, declare as follows:

1. I am the General Counsel of Plaintiff Allison+Partners, LLC ("Plaintiff") in this matter. I make this declaration in support of Plaintiff's Motion for Default Judgment against Defendants FilmHedge, LLC, Southbox Capital, LLC, and Southbox Entertainment, LLC (the "Defaulting Defendants").

2. Plaintiff issued invoices totaling $55,000.00 for services rendered under the Master Services Agreement ("MSA") and Statement of Work ("SOW"). In addition, pursuant to Section 6 of the MSA, Defendants owe a contractual termination fee of $33,000.00. After crediting Defendants' $11,000.00 deposit, the total principal balance owed to Plaintiff is $77,000.00. A true and correct copy of the MSA which includes the SOW is attached hereto as Exhibit A. True and correct copies of the invoices are attached hereto as Exhibit B.

3. On April 8, 2026, the Defaulting Defendants were served by hand delivery on their registered agent. Proofs of Service are attached hereto as Exhibit C.

4. On June 26, 2026, the Clerk entered default against the Defaulting Defendants. A true and correct copy of the Clerk's Entry of Default is attached hereto as Exhibit D.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 13, 2026, at Atlanta, GA

Brian Feldman

General Counsel of Plaintiff

Allison+Partners, LLC

# EXHIBIT A

DocuSign Envelope ID: 638331E3-7A24-4C6B-AD36-F8C7002D4588

**MASTER SERVICE AGREEMENT**
between
**Allison+Partners, LLC**
**& Gosier Holdings, LLC**

**MASTER SERVICE AGREEMENT,** dated as of November 01, 2022, (the "Effective Date") between Allison+Partners, LLC formed under the laws of Delaware ("**Agency**") and **Gosier Holdings, LLC** ("**Client**"), a Delaware corporation with offices located at 384 Northyards Blvd NW, Suite 190, Atlanta, Georgia, 30313, United States, for itself and on behalf of each applicable Client Affiliate (as defined herein).

WHEREAS, Client, on its own and through the applicable Client Affiliate(s), desires to purchase certain services from Agency; and

WHEREAS, Agency wishes to make such services available to Client and such Client Affiliates; and

WHEREAS, the parties wish to enter into this Agreement setting forth the terms and conditions of the purchase and provision of such services;

NOW, THEREFORE, the parties agree as follows:

1.  **FRAMEWORK, SCOPE OF AGENCY SERVICES**

Agency and Client or an entity affiliated with Client ("**Client Affiliate**") may enter into a scope of work, statement of work, work order, schedule, or similar document setting forth the specific services to be provided by such Agency to Client or such Client Affiliate (each, a "**Statement of Work**" or "**SOW**"). Each such SOW will specifically reference this Agreement, will be deemed entered into pursuant to this Agreement, and the terms and conditions of this Agreement will govern such SOW. The specific services to be provided by Agency to Client will be set forth on the applicable SOW (the "**Services**"). The Statement of Work is attached as Schedule "C".

Each reference herein to "**Client**" will mean only the Client or Client Affiliate entering into the applicable SOW with Agency. Each reference to a "party" or the "parties" will mean the applicable Agency and Client entering into the applicable SOW. The parties may agree to vary the terms of this Agreement with respect to a particular SOW or all SOWs between such parties by setting forth such variations in writing. In the event of a conflict between any SOW and this Agreement, the SOW will take precedence solely with respect to such SOW.

2.  **TERM OF THIS AGREEMENT; TERM OF SERVICES**

The Agreement shall be effective as of the date of this letter (the "Effective Date") and cover work performed by Allison+Partners for the Client for a period of one (1) year from the Effective Date (the "Initial Term"), unless terminated earlier in accordance with the termination rights set forth below in Paragraph 6. Unless either party provides written notice at least ninety (90) days in advance of its intention to terminate the Agreement, the Agreement shall automatically continue in force for additional one (1) year periods. Upon each annual anniversary of the Effective Date, the Fees shall be increased by two and a half percent (2.5%). The "Term" shall be the actual period covered by the Agreement.

The term of each SOW will be set forth on such SOW. Client agrees that if Client requires a purchase order or similar document ("**P.O.**") to be issued by Client as a condition for Agency to be paid for such Services, Agency will not be required to commence such Services until Client issues such P.O.

3.  **AGENCY COMPENSATION AND EXPENSES**

DocuSign Envelope ID: 638331E3-7A24-4C6B-AD36-F8C7002D4588

Agency's payments for compensation and expenses for the Services will be set forth in the applicable SOW ("**Compensation**").

4.   **PAYMENT POLICY**

Agency's Fees, expenses and other compensation shall be payable in accordance with Agency's payment policy, which is described in Schedule A / Compensation and Expenses attached to this Agreement.

5.   **MUTUAL INDEMNIFICATION**

   A.   **Client's Indemnity to Agency**

Except for claims for which Agency indemnifies Client hereunder, Client agrees to promptly defend, indemnify and hold Agency and its parents, subsidiaries, and affiliates, and its and their respective officers, directors, employees, agents and contractors ("**Agency Indemnitees**") harmless from and against any claim, damage, loss or expense, including, without limitation, reasonable attorney's fees and judgment and settlement costs, arising out of or resulting from any claim, suit or proceeding brought by a third party against any of the Agency Indemnitees (i) based on any materials or rights supplied to Agency by or through Client; (ii) based on information supplied or approved by Client; (iii) based on any activities undertaken by Agency's on Client's behalf that are authorized by Client; (iv) arising out of the nature or use of Client's products or services; (v) relating to risks which have been brought to Client's attention by Agency in writing where Client has elected to proceed after being so advised of such risks; or (vi) any materials created or supplied hereunder, including, without limitation, when arising out of or resulting from Agency's obligations under the applicable union codes or contracts relating to such materials.

   B.   **Agency's Indemnity to Client**

Provided Client uses the materials produced hereunder in unmodified form, in a manner consistent with any applicable third party licenses, releases and agreements, Agency agrees to promptly defend, indemnify and hold Client harmless from and against any claim, damage, loss or expense, including reasonable attorney's fees and settlement costs, arising from any claim brought by a third party against Client under U.S. law, covered by the then terms and conditions of Agency's advertiser's liability policy, pertaining to libel, slander, defamation, invasion of privacy, piracy, and copyright infringement, arising from Client's use of materials produced by Agency in finished form pursuant to production estimates approved by Client, except to the extent that such claim arises from materials or rights supplied by or through Client or agreements entered into by Client.

   C.   **Cooperation and Settlement**

Upon the assertion of any claim or the commencement of any suit or proceeding against an indemnitee by any third party that may give rise to liability of an indemnitor hereunder, the indemnitee shall promptly notify the indemnitor of the existence of such claim and shall give the indemnitor sole control over the defense and settlement of the claim at its own expense and with counsel of its own selection. Indemnitee shall at all times have the right to participate in such defense at its own expense, and the indemnitee shall not be obligated, without its consent (not to be unreasonably withheld), to participate in any settlement which it reasonably believes would have a material adverse effect on its business. The indemnitee shall make available to the indemnitor all materials relating to the claim, and the parties agree to render to each other such assistance as may reasonably be requested in order to insure a proper and adequate defense. A party shall not make any settlement of any claims which might give rise to liability or obligation of the other party without the prior written consent of the other party.

   D.   **Survival of Indemnity**

2

DocuSign Envelope ID: 638331E3-7A24-4C6B-AD36-F8C7002D4588

The provisions of this paragraph 5 shall survive the termination of this Agreement.

### E.  Third Party Subpoenas

If a party ("Recipient") becomes subject to third party subpoenas or other demands for documents or testimony in connection with any lawsuit or investigation involving the other party's ("Other Party") business or affairs, which lawsuit or investigation is not otherwise covered by the indemnification provisions above, the Recipient will be responsible for notifying the Other Party of the receipt of such subpoena or other demand (unless prohibited by law) and the Other Party shall be responsible for reimbursing the Recipient's reasonable out-of-pocket costs (including, without limitation, reasonable attorneys' fees) incurred in complying with such subpoenas or demands.

## 6.  TERMINATION

### A.  Termination of Master Service Agreement

(1)   Agency and Client will each have the right to terminate this Master Service Agreement with or without cause on not less than ninety (90) days' advance written notice to the other party.

(2)   Either party may terminate this Agreement immediately upon written notice to the other party in the event such other party (a) makes an assignment for the benefit of creditors; (b) is unable to pay its debts as such debts come due; (c) makes any voluntary filing for bankruptcy protection; or (d) becomes subject to any involuntary bankruptcy proceedings, which proceedings are acquiesced to or not dismissed within thirty (30) days.

(3)   In the event of a termination of this Master Service Agreement pursuant to either section (1) or (2) above, each Statement of Work entered into by each Agency and Client or a Client Affiliate will remain in full force and effect unless and until such SOW is terminated in accordance with the terms set forth below with respect to termination of Statements of Work.

### B.  Termination of Statements of Work.

(1)   The applicable Agency and Client or applicable Client Affiliate entering into a Statement of Work will each have the right to terminate such SOW with or without cause on not less than ninety (90) days' advance written notice to the other party.

(2)   The applicable Agency and Client or applicable Client Affiliate entering into a Statement of Work will each have the right to terminate such SOW immediately upon written notice to the other party in the event such other party (a) makes an assignment for the benefit of creditors; (b) is unable to pay its debts as such debts come due; (c) makes any voluntary filing for bankruptcy protection; or (d) becomes subject to any involuntary bankruptcy proceedings, which proceedings are acquiesced to or not dismissed within thirty (30) days.

(3)   The applicable Agency and Client or applicable Client Affiliate entering into a Statement of Work will each have the right to terminate such SOW if the other party fails to comply with any material provision of the SOW (including any provision of this Master Service Agreement). In order to terminate such SOW, the terminating party must give the other party written notice of the breach and thirty (30) days to cure such breach. If the other party fails to cure the breach within the 30 days or the breach cannot be cured, the SOW shall be deemed terminated on the 31st day after the notice of breach has been given.

(4)   For clarity, the termination of one SOW will not affect either the status of this Master Service Agreement, or any other SOW.

DocuSign Envelope ID: 638331E3-7A24-4C6B-AD36-F8C7002D4588

**C.    Responsibilities and Compensation through Termination**

Except as hereafter provided in Paragraph 6, the rights, duties and responsibilities of the parties shall continue throughout the applicable termination notice period, including, without limitation, Agency's right to receive, as applicable, (i) Agency's full fee compensation (including all monthly fees) during the notice period, (ii) commission compensation for media actually ordered, as well as normally ordered, during the notice period; and (iii) Agency's expenses.

Agency shall work with Client promptly following its receipt of notice of termination from Client to begin to make appropriate reductions in staffing of Client's account and to otherwise wind down the servicing of Client's account and prepare for transfer thereof.   Agency will continue to render such services as reasonably directed by Client during the notice period, provided that (a) Client recognizes that during this period the level of services to Client's account is likely to be reduced from the level of services theretofore provided under this Agreement and (b) Agency recognizes and agrees that the level and quality of such services shall be at all times sufficient to meet Agency's obligations hereunder.

**D.    Contracts**

Any contract or commitment made on Client's authorization, and still existing at the expiration of this Agreement, shall be paid for by Client in accordance with the provisions of this Agreement. Prior to termination, Agency shall endeavor to transfer such contract or commitment to another entity, in accordance with Client's instructions, subject to obtaining any necessary consents of third parties.

Any contract Agency has entered into with talent in connection with Client's advertising shall be, simultaneously on the effective date of such termination, automatically assigned to Client, subject to obtaining any necessary consents of third parties.   Client agrees to execute any additional documents, including any assumption agreements, as may be required under the applicable collective bargaining agreement to effect such transfer.

Agency shall be relieved of any further responsibility or liability, and Client shall indemnify Agency against any expense or loss, that Agency may incur as a result of a claim by talent or third party arising after termination with respect to contracts that have been assigned to Client or that otherwise continue after expiration of this Agreement.

**E.    Transfer and Ownership**

All work product of Agency under this Agreement, that is produced by Agency in finished form pursuant to production estimates approved by Client, shall, to the extent permitted by law, and subject to any third party rights in such work product, be deemed a "work made for hire," and the Client shall be deemed to own all of Agency's copyrights in all such work product, provided that Agency has received all amounts due hereunder.  The Agency shall, at Client's cost and expense, execute any and all documents necessary to transfer or vest such copyright ownership in the Client and register the copyright in the name of the Client.

Upon the termination of this Agreement, and provided that Client has assumed any applicable third-party obligations (including, without limitation, union obligations) Agency shall transfer, assign and make available to Client or its representative all of Client's property, in Agency's possession or control, promptly upon Client's payment in full of all amounts due hereunder.

Notwithstanding the foregoing, all software applications, databases, computer programs (including source code and object code for any such programming), and executable code ("Code"), as well as other creative content, methodologies and materials in existence prior to this Agreement (or created outside the scope of this Agreement), excluding any materials provided by Client

DocuSign Envelope ID: 638331E3-7A24-4C6B-AD36-F8C7002D4588

(collectively, "Agency Property"), shall remain the sole and exclusive property of Agency. Agency hereby grants a fully paid-up, perpetual, non-exclusive, non-transferable license to Client to use (without modification) the Agency Property to the extent integrated into the Materials, and solely for the benefit of Client. For clarity, it is understood that (i) Agency shall own all modifications, improvements or enhancements to the Agency Property and (ii) any and all Code utilized by Agency, or made available by Agency for use by Client, that is not integrated within the Materials, may not be used by Client after the term of this Agreement (or applicable Statement of Work) except pursuant to a separately negotiated license agreement.

7.    **GENERAL PROVISIONS**

A.    **Protection of Client's Property**

Agency shall endeavor to safeguard Client's property in Agency's custody or control, but in the absence of gross negligence on the part of Agency or its affiliated companies, Agency will not be responsible for its loss, damage, or destruction or unauthorized use by others.

B.    **Right to Modify Plans**

Client reserves the right to modify, reject, cancel or stop any and all plans, schedules, or work in process; provided however, that if the effect of any such modification or cancellation would result in a reduction of more than ten (10%) percent of the total budgeted compensation payable to Agency hereunder, Client shall continue to be responsible for the original compensation that would have been due to Agency in the absence of such modification/cancellation for the ninety (90) day period following Client's notice of modification/cancellation. In such event Agency shall promptly take proper steps to endeavor to carry out Client's instructions. In turn, Client agrees to assume Agency's liability for all expenses incurred and to indemnify Agency for all claims and actions by third parties for damages and expenses that result from carrying out Client's instructions.

C.    **Force Majeure/Failure of Suppliers**

Neither party shall be deemed in default of this Agreement to the extent that performance of its obligations (other than payment obligations) or attempts to cure any breach are delayed or prevented by reason of any act of God, fire, natural disaster, accident, riots, acts of government, acts of war or terrorism, shortage of materials or supplies, failure of transportation or communications or of suppliers of goods or services, or any other cause beyond the reasonable control of such party. Without limiting the foregoing, Agency shall endeavor to guard against any loss to Client as the result of the failure of media, suppliers, or others to properly execute their commitments, but Agency will not be responsible for their failure.

D.    **Cooperation**

Client acknowledges that the successful and timely rendering of the Services and Additional Services to be provided hereunder will require the good faith cooperation of Client. Accordingly, Client will fully cooperate with Agency, including, without limitation, by (a) providing Agency with all information necessary or appropriate and relevant to the Agency's performance as reasonably required by Agency; (b) making available to Agency (i) personnel of Client, and (ii) to the extent necessary for Agency's development of electronic or digital materials, appropriate development time on Client computer systems, so as to permit Agency to develop or integrate any such materials, provided that the foregoing shall be scheduled at such reasonable times so as to not unreasonably disrupt the conduct of Client's business; (c) providing at least one employee or consultant of Client who shall have substantial relevant experience, to act as a Client contact in connection with Agency's services hereunder; and (d) providing prompt review of materials submitted by Agency.

DocuSign Envelope ID: 638331E3-7A24-4C6B-AD36-F8C7002D4588

E.    **Agent for Disclosed Principal**

Notwithstanding any other provision of this Agreement, any commitment, promise, contract or arrangement made by Agency for the purchase of goods or services on Client's behalf or which purports to bind Client in any way, including but not limited to any commitment for media placement, production, and research services (a "Third Party Contract"), shall be approved in advance and in writing by Client.  Such written approval will be in the form of Client signed media plans for media services and Client signed estimates for production and research services.  Subject to the foregoing, Agency shall be authorized to act on Client's behalf as an agent for a disclosed principal in negotiating and entering into Third Party Contracts on Client's behalf, and Client shall be responsible for any related third-party fees and charges and other obligations pursuant to such Third-Party Contracts. Agency will have the right to procure those purchases and procurement of media, goods and services made by Agency on behalf of Client are made under the concept of sequential liability so that Agency is responsible for the payment of such purchases only after it has received the corresponding payment in full from Client and until such time, Client is solely liable for such purchases. Agency will not be required to make any purchase or commitment with a third party that does not agree to such terms.

F.    **Services to Client's Designees**

Should Client request Agency to make purchases for or render services to third parties (such as representatives or distributors), Client shall be liable to Agency for payment. Estimates for the cost of such services or purchases will be presented to Client for approval prior to commencement of any work and shall be billed to Client upon approval of such estimates.

G.    **Access**

Agency agrees that Client may, at its sole cost and expense, upon sixty (60) days' advance written notice to Agency and not more than once per year, conduct an audit of Agency's financial records for the prior twelve (12) month period relating directly Agency's purchases on behalf of Client under this Agreement, using a mutually agreed upon third party auditor from a so-called "Big 4" accounting firm (i.e., Deloitte, KPMG, Ernst & Young, or PWC) ("Auditor"), provided such Auditor generally adheres to and utilizes professional standards of its industry and agrees in writing to continue to do so in the audit permitted hereunder, and further provided that the Auditor is not (i) compensated on a contingency basis or (ii) providing cost consulting services to Client or (iii) otherwise making available to potential clients services that are competitive to the services generally made available by Agency.  It is understood that no audit shall take longer than five (5) days and the audit shall not include, and in no event shall Client have access to, individual payroll and personnel files; any information relating to Agency's other clients; any of Agency's overhead costs or related information; any other internal Agency costs or non-billable expenses; or any information that is subject to legal restrictions.  Client acknowledges that no record will be available for audit until ninety (90) days after the close of the calendar quarter during which such record was created. Client also agrees that no audit or portion thereof shall occur during the month of December. Agency, at its discretion, may receive, submit and/or retain documentation in an electronic/digital format.  Any such audit shall take place in Agency's primary office.  Each audit shall be conducted during Agency's regular business hours and in such a manner as to not unduly interfere with Agency's operations.  The Auditor shall execute an Agency-provided confidentiality agreement prior to conducting the examination.  The scope of the audit shall be reviewed for appropriateness and subject to Agency's agreement prior to the commencement of the audit.  Agency shall be permitted to review and comment upon a draft audit report prior to the report being presented to the Client.  All audit rights shall cease upon expiration of this Agreement.

DocuSign Envelope ID: 638331E3-7A24-4C6B-AD36-F8C7002D4588

**H.**   **Notice**

All notices which either Agency or Client is required or may desire to give the other party hereunder shall be sufficiently given if delivered in person or sent by registered or certified mail, or by prepaid overnight courier, and/or emailed to Contracts@allisonpr.com with confirmed reply, addressed as follows:

|  |  |
|---|---|
| If to Client: | Gosier Holdings, LLC<br>384 Northyards Blvd NW, Suite 190<br>Atlanta, Georgia, 30313, United States<br>Attention: Jonathan Gosier |
| If to Agency: | Julia Farrell, Global CFO<br>Allison+Partners, LLC<br>40 Gold Street,<br>San Francisco, CA 94133 |

or to such other address as shall be furnished in writing by any such party and such notice shall be deemed to have been given when delivered by hand or courier, or three (3) days after being so mailed.

With respect to each SOW, all notices which either the applicable Agency or the Client or Client Affiliate that is a party to such SOW is required or may desire to give the other party shall be sufficiently given if delivered in person or sent by registered or certified mail, or by prepaid overnight courier, addressed to the Client address set forth above or in the SOW and to the Agency as set forth in the SOW.

**I.**   **Entire Agreement**

This Agreement constitutes the entire agreement between Agency and Client the parties with respect to the subject matter hereof and may only be modified or amended in writing signed by the parties hereto. No waiver by either Agency or Client of the breach of any term or condition of this Agreement will constitute a waiver of, or consent to, any subsequent breach of the same or any other term or condition of this Agreement.

Each SOW will constitute a separate and entire agreement between the applicable Agency and either Client or applicable Client Affiliate entering into such SOW with respect to the subject matter thereof and may only be modified or amended in writing signed by the parties thereto. Each such SOW will be deemed to incorporate the terms and conditions of this Agreement. No waiver by either Agency or Client of the breach of any term or condition of the SOW will constitute a waiver of, or consent to, any subsequent breach of the same or any other term or condition of the SOW.

**J.**   **Confidentiality**

Except in ordinary course of its performance of its obligations hereunder, Agency shall treat as confidential and proprietary and not disclose to any third party during or subsequent to the term of this Agreement any confidential information, whether verbal or written, supplied to Agency by Client regarding Client's plans, programs, plants, processes, products, costs, equipment, operations or customers (collectively, "Client Confidential Information"), without securing the consent of Client. Agency agrees that it shall use such information only as is necessary in performing services under this Agreement and not for any other purposes whatsoever. It is understood that "Client Confidential Information" shall not include any information: that is or becomes publicly available without breach of this Agreement; that is already in Agency's possession prior to disclosure by Client; that is learned by Agency from a third party; that is independently developed by Agency; that Client authorizes Agency to disclose; or that is required to be disclosed by law or legal process.

DocuSign Envelope ID: 638331E3-7A24-4C6B-AD36-F8C7002D4588

Client agrees that it will treat Agency's confidential and proprietary information in a reciprocal manner as set forth above.

### K.    Limitation on Liability

EXCLUDING EACH PARTY'S INDEMNIFICATION OBLIGATIONS HEREUNDER, NEITHER CLIENT NOR AGENCY, NOR THEIR RESPECTIVE PARENTS, AFFILIATED COMPANIES, DIRECTORS, OFFICERS, EMPLOYEES, SHAREHOLDERS, LICENSEES OR AGENTS SHALL BE HELD LIABLE TO THE OTHER FOR INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, PUNITIVE OR EXEMPLARY DAMAGES ARISING IN ANY MANNER FROM THE ACTIVITIES CONTEMPLATED BY THIS AGREEMENT, WHETHER UNDER CONTRACT, TORT, OR OTHER CAUSE OF ACTION, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. EXCEPT AS EXPRESSLY PROVIDED HEREIN, NEITHER PARTY MAKES ANY WARRANTY, EXPRESS OR IMPLIED, REGARDING THE PRODUCTS OR SERVICES TO BE PROVIDED HEREUNDER OR THAT ANY SOFTWARE OR OTHER ELECTRONIC DEVICES PROVIDED OR WEBSITE CREATED OR HOSTED BY AGENCY WILL BE ERROR FREE OR OPERATE WITHOUT INTERRUPTION, AND THE WARRANTIES OF TITLE, MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE ARE EXPRESSLY EXCLUDED.  NOTWITHSTANDING ANY OTHER PROVISION HEREIN, AGENCY'S TOTAL, AGGREGATE LIABILITY OF ALL CLAIMS ARISING IN CONNECTION WITH THIS AGREEMENT SHALL NOT EXCEED THE TOTAL PAYMENTS RECEIVED AND RETAINED BY AGENCY UNDER THIS AGREEMENT AS AGENCY'S FEE AND AGENCY'S TOTAL LIABILITY FOR ANY SPECIFIC CLAIM SHALL NOT EXCEED THE PAYMENTS RECEIVED AND RETAINED BY AGENCY AS ITS FEE FOR THE SERVICES WITH RESPECT TO WHICH THE CLAIM IS MADE. CLAIMS FOR DAMAGES MUST BE MADE BY CLIENT WITHIN ONE (1) YEAR OF THE INCIDENT TO WHICH THEY RELATE OR BE FOREVER BARRED.

### L.    Insurance

Agency, at its own cost and expense, during the term of this Agreement, will maintain in force an advertising liability policy in a minimum amount of five million ($5,000,000) dollars.

### M.    Product Information, etc.

Client shall be responsible for the accuracy, completeness and propriety of information concerning its organization, products, and services and its competitors and their products and services.

### N.    Severability

Whenever possible, each provision of this Agreement will be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision will be deemed restated to reflect the original intentions of the parties as nearly as possible in accordance with applicable law, and, if capable of substantial performance, the remaining provisions of this Agreement shall be enforced as if this Agreement was entered into without the invalid provision.

### O.    Hiring of Agency Employees

During the term of Agency services hereunder, and for one (1) year thereafter, Client will not, directly or indirectly, solicit, employ or use (except as permitted hereunder) the services of any person employed by Agency until six (6) months after the termination of his or her employment with Agency.

### P.    Captions.

DocuSign Envelope ID: 638331E3-7A24-4C6B-AD36-F8C7002D4588

The captions used in this Agreement are for convenience and reference only and do not constitute a part of this Agreement and will not be deemed to limit, characterize or in any way affect any provision of the Agreement, and all provisions of this Agreement will be enforced and construed as if no caption had been used in this Agreement.

Q.    **Applicable Law; Jurisdiction**

This Agreement shall be governed in accordance with the laws of the State of California applicable to contracts made and performed entirely in that state. Each party submits to the exclusive jurisdiction of the federal and state courts located in the State of California, and the courts of appellate jurisdiction therefrom, with respect to any action or proceeding relating to this Agreement, and each party waives any defenses based on venue or forum non conveniens. The parties agree that in the event that any suit or proceeding is brought in connection with this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs.

*****

DocuSign Envelope ID: 638331E3-7A24-4C6B-AD36-F8C7002D4588

Accepted for: Allison+Partners, LLC

Accepted for: Gosier Holdings, LLC

By:     *Paul Breton*
     65966E34287A408

Title:    Managing Director

Date:    11/11/2022

By:     81E51612EA1F40B

Title:    Owner and CEO

Date:    11/11/2022

10

DocuSign Envelope ID: 638331E3-7A24-4C6B-AD36-F8C7002D4588

## SCHEDULE A
## COMPENSATION AND EXPENSES

### FEES

Allison+Partners has agreed to conceive, plan and execute the communications program more specifically described in Schedule C attached hereto (the "Statement of Work" or "SOW"). Allison+Partners works on a retainer basis. Upon execution of this Agreement, you agree to pay Allison+Partners a monthly retainer in the amount of $10,000.00 per month ("Fees") set forth in the SOW. For any work outside of the SOW, or where it takes more time to complete the project than originally anticipated, you will be charged as described in Schedule B. Allison+Partners will increase fees by fifty percent (50%) for special crisis work or specialized consulting. This increase will be agreed to in writing by the client before they are incurred. Notwithstanding any term to the contrary in the Master Service Agreement or its schedules (including without limitation to any SOW), Allison+Partners is under no obligation to return any retainer or other Fees.

### EXPENSES

GENERAL EXPENSES

In addition to our Fees or additional costs incurred for any outside work, you will also be charged a standard flat-rate for basic expenses equal to ten percent (10%) of the Fees ("Basic Expense Fee"). The "Basic Expense Fee" include a range of charges critical to the optimal service of your business. Included within this category are all of our print and online subscriptions to national, consumer and trade media relevant to your industry along with the charges for basic subscriptions to services and research tools including but not limited to: Forrester, Qualtrics, WARC, Global Web Index, Tableau, Meltwater, TrendKite, Sharable Metrics, NewsWhip, Sysomos, HYPR, Mintel (US), Tagger, Gorkana, Critical Mention, Factiva, SEMRush, MOZ and ReportLinker. This fee also includes any additional proprietary software used on your behalf, postage, overnight delivery and messenger service fees, local and long-distance telephone calls, reasonable printing and copying costs, and all other telecommunications used on your behalf and provides budget certainty on these items. These subscriptions and tools are used on behalf of the Client by the Agency. Any additional expenses that we incur as a result of our work, including, but not limited to travel, lodging, and entertainment ("Additional Expenses"), will result in an additional charge, and will not be incurred without the Client's prior written approval and will not be marked up.

THIRD PARTY CHARGES

During our engagement Allison+Partners may recommend retaining third-party vendors. The retention of all third-party vendors will require the Client's prior written approval and we will make every effort to have such third-parties bill the Client directly in order to avoid our standard twenty percent (20%) markup.

### BILLING

During the Term while Services are being provided, Allison+Partners will send you an invoice at the start of each month for the Fees and Basic Expense Fee as applicable that have not otherwise been paid. Any Additional Expenses may be sent in a separate invoice. All Fees, Basic Expense Fee, Additional Expenses, and any other amounts owed by you to Allison+Partners may be setoff against any retainer, fees, deposit or excess funds held by Allison+Partners and are otherwise due and payable within ten (10) days of the invoice date, and those invoices more than thirty (30) days overdue will be subject to an automatic bookkeeping charge of one and half percent (1.5%) per month. If your accounts receivable ever exceeds forty-five (45) days from the invoice date, Allison+Partners retains the right to cease all work being performed for the Client. In any such instance, this shall not relieve Client from the payment obligation for all outstanding fees or interest owed to Allison+Partners.

DocuSign Envelope ID: 638331E3-7A24-4C6B-AD36-F8C7002D4588

## DEPOSIT

A Deposit is an advance payment that may be applied by us toward amounts that you may owe us. Our work depends on your prompt return of this Agreement and receipt of your check for a Deposit in the amount of $11,000.00 (the "Deposit"). You authorize us to apply the Deposit to any and all amounts that may be owed to us, and you agree to replenish the Deposit upon request. Despite your payment of the Deposit, we will continue to issue invoices as stated under "Billing" and expect the monthly payment for the Fees, Basic Expense Fee and any other amounts owed. Any unused amount of the Deposit will be returned to you in the event that our relationship is terminated prior to the use of the full amount of the Deposit.

\*\*\*\*

DocuSign Envelope ID: 638331E3-7A24-4C6B-AD36-F8C7002D4588

**SCHEDULE B**

**Allison + Partners' Rates and Practices**

Under a monthly retainer agreement, we develop monthly scopes of work commensurate with the budget and work closely with our clients to determine deliverables and metrics upon which to measure success.

At Allison+Partners all pricing is output-based, specifically tied to the ask, not commoditized driven by inputs. Our clients invest in the most senior resources that deliver results in the appropriate amount of time. That speaks to the most effective TCO (Total Cost of Ownership). Rate bands are organized by function, e.g., account services, strategy, creative and media and vary based on aligned SOWs below.  Our current rate bands are set forth below:

| Work | Hourly rates |
|---|---|
| Account Services | $100 - $315 |
| Strategy | $225 - $475 |
| Creative/Production | $125 - $450 |
| Media | $100 - $425 |
| Research, Measurement and Analytics | $150 - $450 |

DocuSign Envelope ID: 638331E3-7A24-4C6B-AD36-F8C7002D4588

**SCHEDULE C**
**STATEMENT OF WORK**

**Statement of Work #1**

This Statement of Work ("SOW") effective November 1, 2022, by and between Gosier Holdings LLC ("Client"), a Delaware corporation with its principal place of business in Atlanta, Georgia and Allison+Partners, LLC ("Allison"), formed under the laws of Delaware with its principal place of business in San Francisco, CA.

The parties agree that this SOW incorporates by reference all of the terms and conditions of the Master Services Agreement above (the "MSA").

1. **Services.** Upon execution of this Agreement, Gosier Holdings LLC agrees to pay Allison a retainer in the amount of $10,000.00 per month ("Fees") for services described here below. Any additional expenses that we incur as a result of our work, including, but not limited to travel, lodging, and entertainment ("Additional Expenses"), will result in an additional charge as set forth in Schedule A.

| BASELINE PR PROGRAM |
|---|

**On-Boarding**
In our first month working together, we will review relevant background materials to get our team up to speed and then meet with you and your team to get an immersion into the business and your 2022/2023 business roadmap and marketing plans. The outcome of this on-boarding period will be the development of a detailed communications strategy that aligns with your business and product roadmap and upcoming news milestones.

Within the first few weeks, we will establish client-agency communications processes, schedule regular touch points and align on KPIs and a reporting cadence.

We appreciate the need to start increasing visibility for Southbox Capital, Southbox Entertainment, FilmHedge and Jon Gosier quickly. We will work in parallel to identify storylines/themes, case studies, data proof points, and similar assets we can use right away to start generating media coverage.

**Benchmarking and Measurement**
Within the first month of our program, we will conduct an in-depth analysis of media coverage to establish baselines for share of voice, coverage volume, sentiment, message pull-through and other metrics that can help us set measurable KPIs for the program. We will also determine an appropriate reporting cadence, typically quarterly, and dashboard format.

Throughout our partnership, Allison+Partners will track and analyze program results and make fine-tuning adjustments, as necessary.

**Narrative Development and Story Sourcing**
Beginning in the first month of our partnership, we will want to schedule 30-60-minute interviews with members of the leadership team, current and former customers, and other pertinent subject matter experts to collect the stories, tips, data and key messages that will form the starting point for our ongoing, proactive media pitching. Further conversations can be scheduled with other stakeholders as needed once the program is underway.

Coming out of these conversations, we will develop several core storylines to advance across all media relations and thought leadership activities. We will also develop a broad narrative for Southbox Capital, which includes its relationships with Southbox Entertainment, FilmHedge and other portfolio companies, with consistent messages and clear proof points.

14

DocuSign Envelope ID: 638331E3-7A24-4C6B-AD36-F8C7002D4588

DocuSign Envelope ID: 638331E3-7A24-4C6B-AD36-F8C7002D4588

**Ongoing News Bureau and Trend-Jacking**

Allison+Partners will execute an always-on news bureau of proactive media outreach, pitching stories about Southbox Capital company news and milestones, customer case studies and executive profiles. Additionally, Allison+Partners will routinely monitor news cycles and anticipate upcoming moments when Southbox Capital and its leaders can enter relevant industry conversations about fintech and/or film and TV financing, production and distribution. These types of moments may include awards seasons (e.g., Oscars, Emmys, etc.), significant industry events (e.g., TV Upfronts, film festivals, Money2020, etc.) and relevant cultural moments (e.g., summer movie season, fall TV season, etc.)

Our process for always-on pitching and trend-jacking involves anticipating upcoming news cycles, preparing pre-approved quotes or points-of-view, and responding quickly when opportunities arise. This allows our team to proactively seek out opportunities to introduce Southbox Capital spokespeople to relevant reporters for the purposes of building longer-term relationships.

Allison+Partners will build and maintain a customized media list for Southbox Capital. Example outlets we will prioritize for outreach include:

Fintech and Financial Services
+ American Banker
+ Axios Pro
+ Banking Dive
+ Institutional Investor
+ InvestmentNews
+ Protocol Fintech
+ PYMNTS
+ Tearsheet

National Business and Tech
+ Associated Press
+ Bloomberg News
+ Buzzfeed
+ Cheddar
+ CNBC
+ CNN Business
+ Fast Company
+ Forbes
+ Fortune
+ Fox Business News
+ Insider
+ Marketplace Radio
+ Marketwatch
+ New York Times
+ NPR
+ Reuters
+ USA Today
+ Wall Street Journal
+ Washington Post
+ Yahoo! Finance

Entrepreneurship
+ Black Enterprise
+ BlackBusiness.com
+ CNBC MakeIt

16

DocuSign Envelope ID: 638331E3-7A24-4C6B-AD36-F8C7002D4588

+ Entrepreneur
+ Inc
+ MBE Magazine
+ Savoy
+ The Network Journal

<u>Atlanta</u>
+ Atlanta Business Journal
+ Atlanta Inno
+ Atlanta Journal Constitution
+ Atlanta Tribune
+ BuiltIn Atlanta

<u>Entertainment Trades</u>
+ Deadline
+ Hollywood Reporter
+ Variety

For every interview secured, Allison+Partners will coordinate all logistics, prepare briefing materials for the spokesperson(s) and conduct up to a 30-minute prep session. An Allison+Partners team member will staff all media interviews to facilitate introductions, direct the conversations as needed, capture notes and manage any follow up requests for additional information, visuals, etc.

**Materials Development**
As part of the ongoing scope, we will draft 1-2 pieces of content per month, on average, to support the earned media relations program. Examples include press releases, customer case studies, bylined articles, op-eds, etc.

**Ongoing Strategic Counsel and Account Management**
Senior members of the Allison+Partners team will be available on an ongoing basis to provide counsel on program strategy, brainstorm story ideas, coach spokespeople, and drive program performance. Your scope is fluid, and the budget can be allocated monthly to meet your communication needs. Within the first week of each new month, the agency will deliver a status report and budget update for the concluding months, as well as a scope of work estimate for the current one.

For any work outside of the Program, or where it takes more time to complete the project than originally anticipated, you will be charged based upon then-current hourly rates.

2. **Invoices & Payment.** During the Term while Services are being provided, Allison+Partners will send you an invoice at the start of each month for the Fees and Basic Expense Fee as applicable that have not otherwise been paid. Any Additional Expenses may be sent in a separate invoice. Schedule A to the MSA is incorporated herein by reference.

**Accepted for: Allison+Partners, LLC**

By: _Paul Briton_

Title: Managing Director

Date: 11/11/2022

**Accepted for: Gosier Holdings, LLC**

By: _[signature]_

Title: Owner and CEO

Date: 11/11/2022

17

DocuSign Envelope ID: 638331E3-7A24-4C6B-AD36-F8C7002D4588

# EXHIBIT B



Allison & Partners, LLC • 40 Gold Street • San Francisco, CA 94133 • p 415-217-7500 • f 415-217-7503 • Accounting@allisonpr.com

| | |
|---|---|
| Gosier Holdings, LLC<br>Attn: Jon Gosier<br>384 Northyards Blvd NW<br>Suite 190<br>Atlanta, GA 30313 | **INVOICE**<br>**Invoice Number :** 038427<br>**Date :** 11/17/2022<br>**Page :** 1 of 1<br>**Client PO:** |

|  | **Current** |
|---|---|

**Job:** 013265 - Southbox Capital Retainer 2022-2023
**Component:** 001 - Southbox Capital Retainer 2022-2023

| | | |
|---|---|---|
| Client Deposits | | |
| | 11/1/2022 | 11,000.00 |
| Retainer Service Fees | | |
| November 2022 | 11/1/2022 | 10,000.00 |
| Contracted Expenses | | |
| | 11/1/2022 | 1,000.00 |
| **Total for Job/Component:** | | **22,000.00** |

| **Total** | **$22,000.00** |
|---|---|

Thank you for your business! Terms: Net 10 Days

| **WIRE INSTRUCTIONS** | | **REMITTANCE BY CHECK** |
|---|---|---|
| Credit to the account of: | Allison & Partners, LLC. Dba Allison & Partners | Attn: Accounts Payable |
| Bank: | JP Morgan Chase Bank, N.A. New York, NY | One World Trade Center, Fl 69 |
| Phone: | (212)270-6000 | New York, NY 10007 |
| Account Number: | 844040808 | |
| ABA Routing Number: | 021000021 | *Please reference invoice |
| Swift Code: | CHASUS33 | number in memo or remittance |
| Reference: | Invoice Number | advice* |

**ALLISON+PARTNERS**

## INVOICE

Gosier Holdings, LLC
384 Northyards Blvd NW
Atlanta, GA 30313

| | |
|---|---|
| Invoice Date: | 1/31/2023 |
| Invoice No: | 500100399 |
| Terms: | Net 10 |

Job Number:    GOSIER50000001
Job Name:      Southbox Capital Retainer 2022-2023

| Category | Amount |
|---|---|
| GOSIER50000001 Southbox Capital Retainer 2022-2023 | |
|    Attn:      Jon Gosier | |
| | |
| Professional Fees - January 2023 | 10,000.00 |
| Basic Expense Fee - January 2023 | 1,000.00 |
| | |
| **GOSIER50000001 Southbox Capital Retainer 2022-2023 Total** | **11,000.00** |
| | |
| **INVOICE AMOUNT** | **USD    11,000.00** |

**Make payments to:**

| | | | |
|---|---|---|---|
| Beneficiary Name: | Allison + Partners LLC | ABA #: | 021000021 |
| Bank Name: | JP Morgan Chase Bank | Swift #: | CHASUS33 |
| Bank Address: | P.O. Box 182051, Columbus , OH 43218 | | |
| Account #: | 844040808 | | |

# ALLISON+PARTNERS

## INVOICE

| | | |
|---|---|---|
| Gosier Holdings, LLC | Invoice Date: | 2/28/2023 |
| 384 Northyards Blvd NW | | |
| Atlanta, GA 30313 | Invoice No: | 500100580 |
| | Terms: | Net 10 |

Job Number:        GOSIER50000001
Job Name:          Southbox Capital Retainer 2022-2023

| Category | Amount |
|---|---|
| GOSIER50000001 Southbox Capital Retainer 2022-2023 | |
| Retainer Fees - February 2023 | 10,000.00 |
| Basic Expense Fee | 1,000.00 |
| **GOSIER50000001 Southbox Capital Retainer 2022-2023 Total** | **11,000.00** |
| **INVOICE AMOUNT**              USD | **11,000.00** |

**Make payments to:**

| | | | |
|---|---|---|---|
| Beneficiary Name: | Allison + Partners LLC | ABA #: | 021000021 |
| Bank Name: | JP Morgan Chase Bank | Swift #: | CHASUS33 |
| Bank Address: | P.O. Box 182051, Columbus , OH 43218 | | |
| Account #: | 844040808 | | |



# INVOICE

| | | |
|---|---|---|
| Gosier Holdings, LLC | Invoice Date: | 3/29/2023 |
| Jon Gosier | | |
| 384 Northyards Blvd NW | Invoice No: | 500100946 |
| Atlanta, GA 30313 | | |
| | Terms: | Net 10 |

Job Number:     GOSIER50000001
Job Name:     Southbox Capital Retainer 2022-2023

| Category | Amount |
|---|---|
| GOSIER50000001 Southbox Capital Retainer 2022-2023 | |
| | |
| Retainer Fees - March 2023 | 10,000.00 |
| Basic Expense Fee | 1,000.00 |
| **GOSIER50000001 Southbox Capital Retainer 2022-2023 Total** | **11,000.00** |

| | | |
|---|---|---|
| **INVOICE AMOUNT** | **USD** | **11,000.00** |

**Make payments to:**

| | | | |
|---|---|---|---|
| Beneficiary Name: | Allison + Partners LLC | ABA #: | 021000021 |
| Bank Name: | JP Morgan Chase Bank | Swift #: | CHASUS33 |
| Bank Address: | P.O. Box 182051, Columbus , OH 43218 | | |
| Account #: | 844040808 | | |

# EXHIBIT C

**Brandywine Process Servers, LLC**

PO Box 1360
Wilmington, DE  19899-1360 US
+13024752600
brandywineps@comcast.net
www.wilmingtonprocessserver.com

# INVOICE

**BILL TO**

THE HARTMANN FIRM
THE MEADOW BUILDING
5646 MILTON ST., STE 530
DALLAS, TX  75206

**INVOICE #** 2729
**DATE** 04/08/2026
**DUE DATE** 05/08/2026
**TERMS** Net 30

| DATE | CASE CAPTION | AMOUNT |
|------|--------------|--------|
| 04/08/2026 | ALLISON PARTNERS, LLC V GOSIER HOLDINGS, LLC, ET AL. | |
| | FILMHEDGE, LLC | 129.00 |
| | SOUTHBOX CAPITAL, LLC | 79.00 |
| | SOUTHBOX ENTERTAINMENT, LLC | 79.00 |

## Ways to pay

BALANCE DUE

**$287.00**





View and pay

TAX ID#: 39-4552423

AO 441    Summons in a Civil Action

# United States District Court
## SOUTHERN DISTRICT OF CALIFORNIA

Allison Partners, LLC

*Plaintiff*

**V.**

Gosier Holdings, LLC; FilmHedge, LLC; Southbox
Capital, LLC; Southbox Entertainment, LLC

*Defendant*

**Civil Action No.** 25-cv-0680-WQH-JLB

## SUMMONS IN A CIVIL ACTION

To:  *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) - or 60 days if you are the United States or a United States agency, or an office or employee of the United States described in Fed. R. Civ. P. 12(a)(2) or (3) - You must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

David P Strauss
501 West Broadway, Suite 800
San Diego, CA 92101
(619)237-5300

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Date:  _____3/24/25_____



John Morrill
*CLERK OF COURT*

S/ _____
                    A. Cortez
        *Signature of Clerk or Deputy Clerk*

AO 441    Summons in a Civil Action

(Page 2)

**Civil Action No.** 25-cv-00680-WQH-JLB          Date Issued: _____ 3/24/25 _____

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4(1))*

This summons for *(name of individual and title, if any)* SOUTHBOX CAPITAL, LLC _____

was received by me on *(date)* __ 04/08/2026 _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of the individual)* HARVARD BUSINESS SERVICES, INC., AS AGENT, ACCEPTED BY ALLISON RATHMANNER (SECRETARY OF THE REGISTERED AGENT) , who is

designated by law to accept service of process on behalf of *(name of organization)* SOUTHBOX CAPITAL, LLC _____

16192 COASTAL HWY, LEWES, DE 19958 AT 2:10 PM _____ on *(date)* 04/08/2026 ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify)*:


My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: 04/08/2026 _____          _____
                                                              *Server's Signature*

                                    FRANK PRITCHETT   PROCESS SERVER
                                    _____
                                            *Printed name and title*
                                    BRANDYWINE PROCESS SERVERS, LLC
                                    PO BOX 1360, WILMINGTON, DE 19899
                                              302-475-2600
SERVED SUMMONS IN A CIVIL ACTION;                      *Server's address*
PLAINTIFFS ORIGINAL COMPLAINT; CIVIL COVER SHEET;

---

NOTICE OF RIGHT TO CONSENT TO TRIAL BY A UNITED STATES MAGISTRATE JUDGE

IN ACCORDANCE WITH THE PROVISION OF 28 USC 636(C) YOU ARE HEREBY NOTIFIED THAT A U.S. MAGISTRATE JUDGE OF THIS DISTRICT MAY, UPON CONSENT OF ALL PARTIES, CONDUCT ANY OR ALL PROCEEDINGS, INCLUDING A JURY OR NON-JURY TRIAL, AND ORDER THE ENTRY OF A FINAL JUDGMENT.

YOU SHOULD BE AWARE THAT YOUR DECISION TO CONSENT OR NOT CONSENT IS ENTIRELY VOLUNTARY AND SHOULD BE COMMUNICATED SOLELY TO THE CLERK OF COURT.  ONLY IF ALL PARTIES CONSENT WILL THE JUDGE OR MAGISTRATE JUDGE WHOM THE CASE HAS BEEN ASSIGNED BE INFORMED OF YOUR DECISION.

JUDGMENTS OF THE U.S. MAGISTRATE JUDGES ARE APPEALABLE TO THE U.S. COURT OF APPEALS IN ACCORDANCE WITH THIS STATUTE AND THE FEDERAL RULES OF APPELLATE PROCEDURE.

AO 441    Summons in a Civil Action                                                                                    (Page 2)

Civil Action No. 25-cv-00680-WQH-JL⊞                          Date Issued:         3/24/25

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4(1))*

This summons for *(name of individual and title, if any)* SOUTHBOX ENTERTAINMENT, LLC

was received by me on *(date)* 04/08/2026                              .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of the individual)* HARVARD BUSINESS SERVICES, INC., AS AGENT, ACCEPTED BY ALLISON RATHMANNER (SECRETARY OF THE REGISTERED AGENT) , who is

designated by law to accept service of process on behalf of *(name of organization)* SOUTHBOX ENTERTAINMENT, LLC

16192 COASTAL HWY, LEWES, DE 19958 AT 2:10 PM                    on *(date)* 04/08/2026    ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify)*:



My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: 04/08/2026 _____                    _____
                                                              *Server's Signature*

                                                    FRANK PRITCHETT   PROCESS SERVER
                                                    _____
                                                    *Printed name and title*
                                                    BRANDYWINE PROCESS SERVERS, LLC
                                                    PO BOX 1360, WILMINGTON, DE 19899
                                                    302-475-2600
SERVED SUMMONS IN A CIVIL ACTION;                   *Server's address*
PLAINTIFFS ORIGINAL COMPLAINT; CIVIL COVER SHEET;

---

NOTICE OF RIGHT TO CONSENT TO TRIAL BY A UNITED STATES MAGISTRATE JUDGE

IN ACCORDANCE WITH THE PROVISION OF 28 USC 636(C) YOU ARE HEREBY NOTIFIED THAT A U.S. MAGISTRATE JUDGE OF THIS DISTRICT MAY, UPON CONSENT OF ALL PARTIES, CONDUCT ANY OR ALL PROCEEDINGS, INCLUDING A JURY OR NON-JURY TRIAL, AND ORDER THE ENTRY OF A FINAL JUDGMENT.

YOU SHOULD BE AWARE THAT YOUR DECISION TO CONSENT OR NOT CONSENT IS ENTIRELY VOLUNTARY AND SHOULD BE COMMUNICATED SOLELY TO THE CLERK OF COURT. ONLY IF ALL PARTIES CONSENT WILL THE JUDGE OR MAGISTRATE JUDGE WHOM THE CASE HAS BEEN ASSIGNED BE INFORMED OF YOUR DECISION.

JUDGMENTS OF THE U.S. MAGISTRATE JUDGES ARE APPEALABLE TO THE U.S. COURT OF APPEALS IN ACCORDANCE WITH THIS STATUTE AND THE FEDERAL RULES OF APPELLATE PROCEDURE.

AO 441    Summons in a Civil Action                                                                  (Page 2)

**Civil Action No.** 25-cv-00680-WQH-JLB                          Date Issued:          3/24/25

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4(1))*

This summons for *(name of individual and title, if any)* FILMHEDGE, LLC _____

was received by me on *(date)* ___04/08/2026_____ .

    ☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

    ☐ I left the summons at the individual's residence or place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

    ☐ I served the summons on *(name of the individual)* HARVARD BUSINESS SERVICES, INC., AS AGENT, ACCEPTED BY ALLISON RATHMANNER (SECRETARY OF THE REGISTERED AGENT) , who is

designated by law to accept service of process on behalf of *(name of organization)* FILMHEDGE, LLC _____

16192 COASTAL HWY, LEWES, DE 19958 AT 2:10 PM _____ on *(date)* 04/08/2026 ; or

    ☐ I returned the summons unexecuted because _____ ; or

    ☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date:   04/08/2026                                 _____
                                                                    *Server's Signature*

                                                      FRANK PRITCHETT   PROCESS SERVER
                                                   _____
                                                            *Printed name and title*
                                                      BRANDYWINE PROCESS SERVERS, LLC
                                                      PO BOX 1360, WILMINGTON, DE 19899
                                                                  302-475-2600
                                                   _____
                                                            *Server's address*

SERVED SUMMONS IN A CIVIL ACTION;
PLAINTIFFS ORIGINAL COMPLAINT; CIVIL COVER SHEET;

---

NOTICE OF RIGHT TO CONSENT TO TRIAL BY A UNITED STATES MAGISTRATE JUDGE

IN ACCORDANCE WITH THE PROVISION OF 28 USC 636(C) YOU ARE HEREBY NOTIFIED THAT A U.S. MAGISTRATE JUDGE OF THIS DISTRICT MAY, UPON CONSENT OF ALL PARTIES, CONDUCT ANY OR ALL PROCEEDINGS, INCLUDING A JURY OR NON-JURY TRIAL, AND ORDER THE ENTRY OF A FINAL JUDGMENT.

YOU SHOULD BE AWARE THAT YOUR DECISION TO CONSENT OR NOT CONSENT IS ENTIRELY VOLUNTARY AND SHOULD BE COMMUNICATED SOLELY TO THE CLERK OF COURT. ONLY IF ALL PARTIES CONSENT WILL THE JUDGE OR MAGISTRATE JUDGE WHOM THE CASE HAS BEEN ASSIGNED BE INFORMED OF YOUR DECISION.

JUDGMENTS OF THE U.S. MAGISTRATE JUDGES ARE APPEALABLE TO THE U.S. COURT OF APPEALS IN ACCORDANCE WITH THIS STATUTE AND THE FEDERAL RULES OF APPELLATE PROCEDURE.

# EXHIBIT D



# United States District Court

## SOUTHERN DISTRICT OF CALIFORNIA

Allison Partners, LLC

                                                    **Civil No.**  25-cv-0680-WQH-JLB

                                    **Plaintiff,**

                        **V.**

Gosier Holdings, LLC et. al.                         **DEFAULT**

                                    **Defendant.**

     It appears from the record in the above entitled action that Summons issued on the Original Complaint Filed on 3/24/2025 has been regularly served upon each of the Defendants hereinafter named; and it appears from the affidavit of counsel for Plaintiff and the records herein that each of the Defendants has failed to plead or otherwise defend in said action as required by said Summons and provided by the Federal Rules of Civil Procedure.  Now, therefore, on request of counsel for Plaintiff, the DEFAULT of each of the following Defendants is hereby entered: FilmHedge, LLC; Southbox Capital, LLC; Southbox Entertainment, LLC

Entered On:  6/26/2026                    **JOHN MORRILL, Clerk of Court**

                                    By:  s/ B. Chandler _____

                                            B. Chandler, Deputy

# EXHIBIT 2

## SUPPLEMENTAL DECLARATION OF BRIAN FELDMAN  IN SUPPORT OF PLAINTIFF'S MOTION FOR  DEFAULT JUDGMENT

I, Brian Feldman, declare as follows:

1. My name is Brian Feldman. I am over eighteen (18) years of age, competent to make this declaration, and have personal knowledge of the facts stated herein. If called as a witness, I could and would testify competently thereto.

2. I previously submitted my Declaration in Support of Plaintiff's Motion for Default Judgment (the "Original Declaration"). I submit this Supplemental Declaration in support of Plaintiff Allison Partners, LLC's Renewed Motion for Default Judgment against Defendants FilmHedge, LLC, Southbox Capital, LLC, and Southbox Entertainment, LLC.

3. The Master Services Agreement attached as Exhibit A to my Original Declaration identifies the client as "Gosier Holdings, LLC." The signature block reflects that the agreement was accepted for "Gosier Holdings, LLC" by Jon Gosier, who identified his title as "Owner and CEO."

4. The invoices attached as Exhibit B to my Original Declaration identify the client as "Gosier Holdings, LLC." Those invoices consistently identify the engagement internally as the "Southbox Capital Retainer."

5. After Gosier Holdings, LLC was dismissed from this action without prejudice because Plaintiff was unable to effect service, Plaintiff undertook additional efforts to determine whether Gosier Holdings, LLC existed as a legal entity and, if so, where it had been organized or registered.

6. As part of that investigation, Plaintiff searched the official business entity records maintained by the Delaware Division of Corporations and the Georgia Secretary of State, as well as other publicly available sources reasonably calculated to identify the existence of a legal entity named "Gosier Holdings, LLC." Those efforts included searches of publicly available trademark records, assumed-name records, business databases, and internet resources. Plaintiff was unable to locate any official public record establishing the existence of a legal entity organized or registered under the name "Gosier Holdings, LLC."

7. During that investigation, Plaintiff located a publicly available webpage on gosier.org containing a biography of Jon Gosier. That webpage describes

1
Page

Southbox Capital as "d/b/a Gosier Holdings." A true and correct screenshot of that webpage is attached hereto as Exhibit A.

8. During the investigation, Plaintiff also located a publicly available business database www.opencorporates.com that associated the name "Gosier Holdings, LLC" with Delaware Corporate Number 6334225. A true and correct screenshot of the search results is attached hereto as Exhibit B.

9. Plaintiff independently searched Corporate Number 6334225 using the official website maintained by the Delaware Division of Corporations. The official Delaware records identify Corporate Number 6334225 as Southbox Capital, LLC, a Delaware limited liability company formed on March 3, 2017, and do not identify that Corporate Number as belonging to an entity named "Gosier Holdings, LLC." A true and correct screenshot of the Delaware Division of Corporations search results is attached hereto as Exhibit C.

10. During Plaintiff's investigation, Plaintiff was unable to locate any official public record establishing the existence of a legal entity organized or registered under the name "Gosier Holdings, LLC." At the same time, Plaintiff confirmed that: (a) Allison Partners' invoices consistently identified the engagement as the "Southbox Capital Retainer"; (b) Jon Gosier publicly described Southbox Capital as "d/b/a Gosier Holdings"; and (c) the Delaware Corporate Number associated in a publicly available business database with "Gosier Holdings, LLC" is assigned in the official records of the Delaware Division of Corporations to Southbox Capital, LLC.

11. At no time during Allison Partners' engagement did Jon Gosier or anyone acting on behalf of the Southbox entities advise Allison Partners that "Gosier Holdings, LLC" did not exist, that Allison Partners had contracted with the wrong entity, or that Southbox Capital, LLC disputed responsibility for payment under the Master Services Agreement.

12. Throughout Allison Partners' engagement, the professional services described in the Master Services Agreement were performed for the benefit of the Southbox enterprise, including Southbox Capital, LLC, FilmHedge, LLC, and Southbox Entertainment, LLC. Those entities accepted and retained the benefits of Allison Partners' services, and Allison Partners has not been paid the amounts described in Plaintiff's Renewed Motion for Default Judgment.

Docusign Envelope ID: BCAE3C92-DD3E-898F-8217-5658DE3BB2E6

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on ___7/23/2026___, at Atlanta, Georgia

DocuSigned by:

*Brian Feldman*

E20AA5A1741146B...

Brian Feldman

General Counsel of Plaintiff

Allison+Partners, LLC

3

Page

# EXHIBIT A

Home    Private Equity Portfolio ﹀    Books    Biography ﹀    Photos ﹀    Contact

**BIOGRAPHY**

Jon Gosier has built a remarkable career as a serial entrepreneur, investor, and innovator. As the founder of Southbox Capital (d/b/a Gosier Holdings), he oversees a diverse $200M+ portfolio spanning technology, real estate, venture capital, and credit facilities.

Gosier's entrepreneurial journey reached a significant milestone in 2024 when Experian acquired his company Audigent for more than $300 million. Prior to the acquisition, Audigent had been recognized as one of America's fastest-growing technology companies by INC5000, Financial Times, and Deloitte.

His current venture, FilmHedge, is transforming entertainment finance by building the industry's first comprehensive financial data and credit system. Since 2020, FilmHedge and its partners have returned over $211 million across more than 40 feature films and scripted series, revolutionizing how financial institutions evaluate and invest in bluechip media productions.

Before entering the world of finance and technology, Gosier's work focused on social impact in East Africa. While based in Uganda, he co-founded AfriLabs, a network of technology innovation hubs now spanning over 90 cities, and Appfrica, a consultancy that served tech giants including Google, Facebook, and Twitter. His contributions to crisis response and counterintelligence in the region earned recognition from the White House in 2010, 2012, and 2013. He recounted this period of his life in his 2023 memoir Code Switch (Harper Collins/Misfit Press).

A thought leader in ethical innovation, Gosier's 2014 TEDTalk has inspired millions of viewers worldwide. His influence was further recognized when TIME Magazine named him one of 'the new faces of

# EXHIBIT B

# opencorporates

The Open Database Of The Corporate World

Company name or numb [ Search ]

◉ Companies   ○ Officers

- Log in/Sign up

# GOSIER HOLDINGS, LLC

Company Number
  6334225
Incorporation Date
  Please log in to see this data
Company Type
  Limited Liability Company
Jurisdiction
  Delaware (US)
Agent Name
  REGISTERED OFFICE SERVICE COMPANY
Agent Address
  203 NE FRONT ST STE 101, MILFORD, Kent, DE, 19963
Directors / Officers
  1 officer available, please log in to see this data

Data source and freshness

Last update from source
Last change recorded
Next update from source
Source
  Please log in to see this data

Learn more about our trust and data transparency policy
This information comes to you from **OpenCorporates** — the leading authority on legal-entity data

Read more about us and why you should trust this data in our purpose, history and principles

The OpenCorporates website is free for general-public and public-benefit use

Use the OpenCorporates API

License this data in bulk

\* While we strive to keep this information correct and up-to-date, it is not the primary source, and the company registry should always be referred to for definitive information
**OpenCorporates :** legal-entity data done right
Global Authority

- **Unrivalled domain expertise**
- **Driving global policy**
- **Certified B Corp**

Trustworthy data

- **100% official primary sources**
- **Quality baked in**
- **Underpinned by Legal-Entity Data Principles**

Designed for the future

- **Legal-entity data model**
- **For the needs of today and tomorrow**
- **Provenanced, standardized data**

Learn more

# About us

- [About](#)
- [Blog](#)
- [Team](#)
- [Governance](#)
- [Jobs](#)

# Using our data

- [Our data](#)
- [Our purpose](#)
- [Legal/Licence](#)
- [User/Cookie privacy policy](#)
- [Public records privacy policy](#)

# Help

- [API Reference](#)
- [Glossary](#)
- [Status](#)

# Contact

- [Twitter](#)
- [Medium](#)
- [Newsletter](#)
- [Problems with our data?](#)
- [Temporary redaction](#)

# Impact

- [Impact](#)
- [Grants](#)

# EXHIBIT C

